**Charles CLOSE, Plaintiff, Appellee,**

v.

**John W. LEDERLE et al., Defendants, Appellants.**

**No. 7477.**

United States Court of Appeals, First Circuit.

Heard March 2, 1970.

Decided April 28, 1970.

Walter H. Mayo, III, Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., was on brief, for appellants.

Isidore Silver, Brookline, Mass., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Plaintiff, an art instructor at the University of Massachusetts, was asked by a superior if he would care to have an exhibition of his paintings on the walls of a corridor used from time to time for such purposes in the Student Union, a university building. He said that he would. The exhibition, which had been arranged for but not seen by the superior in charge, proved to be controversial. Several administrative meetings were held, attended by the university president, the provost, and other officials, and after it had been up for five of the twenty-four days scheduled, the exhibition was removed. Claiming that this was an invasion of his constitutional rights, plaintiff sued for a mandatory injunction ordering the officials to make the space available for the equivalent of the unexpired period. The district court, after trial, granted the relief and defendants appeal.

Basically, the district court held that "embarrassment" and "annoyance," causing defendants to conclude that the exhibition was "inappropriate" to the corridor, was insufficient to warrant interference with plaintiff's right of free speech. This holding was not grounded upon a finding that defendants were unreasonable in their opinion. The court refused autoptic profference of the exhibition, apparently taking the position that, at least in the absence of express regulations as to what was impermissible, defendants had no right to censor simply on the basis of offensiveness which fell short of unlawful obscenity.

We disagree. We first consider the nature and quality of plaintiff's interest. Plaintiff makes the bald pronouncement, "Art is as fully protected by the Consti-

tution as political or social speech." It is true that in the course of holding a motion picture entitled to First Amendment protection, the Court said in Joseph Burstyn, Inc. v. Wilson, 1952, 343 U.S. 495, at 501, 72 S.Ct. 777, at 780, 96 L.Ed. 1098 that moving pictures affect public attitudes in ways "ranging from direct espousal of a political or social doctrine to the subtle shaping of thought which characterizes all artistic expression." However, this statement in itself recognizes that there are degrees of speech.

 There is no suggestion, unless in its cheap titles, that plaintiff's art was seeking to express political or social thought. *Cf.* People v. Radich, 26 N.Y. 114, 308 N.Y.S.2d 846, 257 N.E.2d 30. Cases dealing with students' rights to hear possibly unpopular speakers, *e.g.*, Brooks v. Auburn University, D.Ala., 1969, 296 F.Supp. 188, aff'd 5 Cir., 412 F.2d 1171; Dickson v. Sitterson, M.D. N.C., 1968, 280 F.Supp. 486; Smith v. University of Tennessee, E.D.Tenn., 1969, 300 F.Supp. 777; Snyder v. Board of Trustees, N.D.Ill., 1968, 286 F.Supp. 927, involve a medium and subject matter entitled to greater protection than plaintiff's art.[1] Even as to verbal communication the extent of the protection may depend upon the subject matter. *See* New York Times v. Sullivan, 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686; Garrison v. Louisiana, 1964, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125. We consider plaintiff's constitutional interest minimal.

 In this posture we turn to the question whether defendants have demonstrated a sufficient counterinterest to justify their action. The corridor was a passageway, regularly used by the public, including children.[2] Several of the paintings were nudes, male or female, displaying the genitalia in what was described as "clinical detail." A skeleton was fleshed out only in this particular. One painting bore the title, "I'm only 12 and already my mother's lover wants me." Another, "I am the only virgin in my school."

The defendants were entitled to consider the primary use to which the corridor was put. LeClair v. O'Neil, D. Mass., 1969, 307 F.Supp. 621. See C. A. Wright, The Constitution on the Campus. 22 Vand.L.Rev. 1027, 1040–43 (1969). On the basis of the complaints received, and even without such, defendants were warranted in finding the exhibit inappropriate to that use. Where there was, in effect, a captive audience, defendants had a right to afford protection against "assault upon individual privacy," *see* Redrup v. New York, 1967, 386 U.S. 767, 769, 87 S.Ct. 1414, 18 L. Ed.2d 515, short of legal obscenity. *Cf.* Emerson, Toward a General Theory of the First Amendment, 72 Yale L.J. 877, 938 (1963). To quote from Professor Wright, *supra*, at 1058,

> "There are words that are not regarded as obscene, in the constitutional sense, that nevertheless need not be permitted in every context. Words that might properly be employed in a term paper about Lady Chatterley's Lover or in a novel submitted in a creative writing course take on a very different coloration if they are bellowed over a loudspeaker at a campus rally or appear prominently on a sign posted on a campus tree."

1. The cited cases all rest to some extent upon principles of vagueness and over-breadth. We may doubt, however, the value of doctrines based on "chilling effect" and prejudice from lack of fair warning when no penalty is involved beyond an order to desist. In any event, the degree to which specificity will be required should correspond to the importance of the speech interest asserted. In the case at bar the absence of a regulation against offensive exhibitions, and the failure to describe what would be considered offensive, does not impress us as significant.

2. While the presence of children might be thought to show defendants inescapably reasonable, *cf.* Ginsberg v. New York, 1968, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195, we do not deem it necessary to make such a finding, and rest our decision on broader principles.

Freedom of speech must recognize, at least within limits, freedom not to listen.

In hyperconcern with his personal rights plaintiff would not only regard his interest in self-expression as more important then the interests of his unwilling audience, but asks us to add nearly three weeks of such exposure to the five days he has already received. With all respect to the district court, this is a case that should never have been brought.

Judgment reversed. Complaint dismissed.