Irving Lang, J.
The defendant owns and operates the Rialto Theater, at 1481 Broadway, in the County of New York. On September 3, 1971, the movie “ Christa ” was being shown and several advertisements were placed outside the theatre, concededly with the defendant’s knowledge.
Among the advertisements was a large photograph (almost life size) clearly visible from the center of Broadway, of a nude female in a prone position with her buttocks exposed and visible. Also visible from the street was a large billboard containing numerous smaller photographs. Among them were pictures of females, apparently nude, with opaque or translucent coverings over buttocks and breasts. Examination of the photographs *113 revealed that they had been 1 ‘ touched up ’ ’, i.e., the coverings had been added to the photograph, not the model. In some of the photographs parts of the breasts, above and below the nipple were visible.
As of September 1, 1971 two new sections were added to the Penal Law. Sections 245.10 and 245.11 prohibited the display of sexual materials easily visible from public thoroughfares or in public places if the materials appeal predominantly to prurient interest in sex, and depict nudity, sexual conduct, or sadomasochistic abuse- — -even though the materials may not be obscene within the meaning of the present obscenity law.
The defendant was charged with and tried without a jury for a violation of this statute. The defendant challenges the constitutionality of the statute on the grounds that it is vague, over-broad, and violative of First Amendment guarantees of free speech and press.
Since the language of the statute and its purpose are in issue, both the preamble and the text of the law, chapter 962 of the Laws of 1971 are set forth.
“ The People of the State of New York, represented in Senate and Assembly, do enact as follows:
“ Section 1. It is hereby declared that public displays of photographs, drawings and similar visual material depicting nudity, sexual conduct, and sado-masochistic activities and that appeal predominantly to prurient interest in sex are offensive to passersby when readily visible from public thoroughfares. Regardless whether such public displays are 1 obscene ’ within the meaning of the penal law and constitutional law, they are not constitutionally protected, because they are thrust indiscriminately upon unwilling audiences of adults and children, and constitute assaults upon individual privacy. Accordingly, it is the objective of this Act to protect users of public thoroughfares from unwanted subjection to such displays.
“§ 2. The penal law is hereby amended by inserting therein two new sections, to be sections 245.10 and 245.11, to read as follows:
“ § 245.10 Public display of offensive sexual material; definitions of terms.
“ The following definitions are applicable to section 245.11:
“ 1. ‘ Nudity ’ means the showing of the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state.
*114 “ 2. ‘ Sexual conduct ’ means an act of masturbation, homosexuality, sexual intercourse, or physical contact with a person’s clothed or unclothed genitals, pubic area, buttocks or, if such person be a female, breast.
“ 3. 1 Sado-masochistic abuse ’ means flagellation or torture by or upon a person clad in undergarments, a mask or bizzare costume, or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed.
“4. 1 Transportation facility ’ means any conveyance, premises or place used for or in connection with public passenger transportation, whether by air, railroad, motor vehicle or any other method. It includes aircraft, watercraft, railroad cars, buses, and air, boat, railroad and bus terminals and stations and all appurtenances thereto.
“ § 245.11 Public display of offensive sexual material.
“ A person is guilty of public display of offensive sexual material when, with knowledge of its character and content, he displays or permits to be displayed in or on any window, showcase, newsstand, display rack, wall, door, billboard, display board, viewing screen, marquee or similar place, in such manner that the display is easily visible from or in any public street, sidewalk or thoroughfare or transportation facility, any pictorial, three-dimensional or other visual representation of a person or a portion of the human body that predominantly appeals to prurient interest in sex, and that:
“ (a) depicts nudity, or actual or simulated sexual conduct or sado-masochistic abuse; or
“ (b) depicts or appears to depict nudity, or actual or simulated sexual conduct or sado-masochistic abuse, with the area of the male or female subject’s unclothed or apparently unclothed genitals, pubic area or buttocks, or of the female subject’s unclothed or apparently unclothed breast, obscured by a covering or mark placed or printed on or in front of the material displayed, or obscured or altered in any other manner.
‘ ‘ Public display of offensive sexual material is a Class A misdemeanor.”
GENERAL POLICE POWER OVER PUBLIC DISPLAY.
The general right of government to regulate public displays, billboards and signs in the interest of public safety, health, traffic control, public welfare and morality is clear. (New York State, Thruway Auth. v. Ashley Motor Ct., 10 N Y 2d 151 [1961]; Village of Larchmont v. Sutton, 30 Misc 2d 245 [1961]; People v. Stover, 12 N Y 2d 462 [1963].) Esthetic considerations alone *115 might justify such regulation. (Matter of Cromwell v. Ferrier, 19 N Y 2d 263 [1967].) “ ‘ The police power is not to be limited to guarding merely the physical or material interests of the citizen. His moral, intellectual and spiritual needs must also be considered.’” (Nettleton Co. v. Diamond, 27 N Y 2d 182, 192-193).
As long as a statute is reasonably related to a legitimate legislative purpose, courts should not interfere with or substitute their judgment for that of the Legislature. ‘ ‘ A strong presumption of validity attaches to legislative enactments and a party who is attacking the constitutionality of a statute bears the heavy burden of establishing unconstitutionality beyond a reasonable doubt.” (Nettleton Co. v. Diamond, 27 N Y 2d 182, 193, supra, Fenster v. Leary, 20 N Y 2d 309; Matter of Van Berkel v. Power, 16 N Y 2d 37; Matter of Roosevelt Raceway v. Monaghan, 9 N Y 2d 293).
That public display of explicit sexual materials is a source of State and National concern hardly needs documentation. Indeed the statute being challenged not only expresses such concern in its preamble but follows the recommendations of the Presidential Commission on Obscenity and Pornography, which, while urging noninterference with people who wish to read, obtain or view explicit sexual materials, recommended ‘1 legislation to protect persons from having sexual material thrust upon them without their consent through the mails or through open public display.” (Report of the Commission on Obscenity and Pornography, p. 57, Bantam ed., 1970).
THE FIRST AMENDMENT
Of course, display regulations under the police power of the State may not be utilized in arbitrary or unreasonable fashions either to deprive persons of property or, more important, to deprive citizens of First Amendment guarantees, the protection of which requires special sensitivity. Thus, broad zoning or other ordinances which can be used to stifle political expression or which are enacted for that purpose cannot be justified. (People v. Katz, 21 N Y 2d 132 [1967]; Peltz v. City of South Euclid, 11 Ohio St. 2d 128; Pace v. Village of Walton Hills, 15 Ohio St. 2d 51; Cox v. Louisiana, 379 U. S. 536; cf. Kovacs v. Cooper, 336 U. S. 77 (loud and raucous sound trucks barred).
However, freedom of speech and of the press has long been recognized to contain no absolutes. A balancing process is necessary in those instances where First Amendment claims conflict with other constitutional rights and institutions. This *116 conflict was no more apparent than in Rowan v. Post Office Dept. (397 U. S. 728 [1970]) where the Supreme Court upheld the constitutionality of Federal legislation which granted the recipient of material the sole discretion to determine if the material is erotically arousing or sexually provocative, and the power to require the mailer to remove Mm from the mailing list. The court held that this unqualified right of an individual to insulate himself from unsolicited mail was nevertheless consistent with the constitutional guarantees of freedom of expression because ‘ ‘ the right of every person ‘ to be left alone ’ must be placed in the scales with the right of others to communicate ” (p. 736).
While the Supreme Court did not speak to the issue of public display, the First Circuit did in Close v. Lederle (424 F. 2d 988 [1970]). In Close (supra) the court held that the university officials were warranted in finding paintings, exhibited in a hall frequented by the public, inappropriate for exhibit therein, even though they were not obscene. The court was willing to allow the paintings ’ removal even without the receipt of complaints, solely as to protect the captive audience from assaults upon individual privacy.
Even without a specific statute, the right of the State to protect public sensibilities in the area of public display of explicit sexual material was recently upheld by the Arizona Court of Appeals. An “ X ” rated movie depicting nudity and sexual activity was shown in a drive-in theatre. The screen was clearly visible to passersby from highways, streets, residences and business establishments. Children were seen in the vicinity of the drive-in. Despite a finding that the film was not obscene, the Arizona court sustained an injunction founded in nuisance.
‘1 A drive-in theatre is capable of imposing its pictures upon persons without their consent. If the owner of land can be prohibited from polluting the community with noxious smoke and unpleasant odors, we conceive of no reason why he cannot be prohibited from polluting the neighborhood with visual material harmful to children.” (Cactus Corp. v. State of Arizona, 14 Ariz. App. 38, 42).
The principles and guidelines devised by these courts in these and other cases were followed by the Supreme Court of Washington in State of Washington v. Oyen (480 P. 2d 766, 772 [ 1971]) which restated the issue very succinctly: “ It is incumbent upon the court to weigh the purported impairment of speech engendered by the statutory provision against the importance of societal interest sought to be vindicated by the statute, as well as the nature and extent of the threat which/the statutory forbidden conduct poses to that interest.” In the instant case, *117 the First Amendment right sought to be protected is minimal compared to the harm sought to be corrected. The content of the defendant’s film is not affected. The right of persons to see the picture is in no way jeopardized. If people want to seek out such explicit sexual material they may do so. The statute merely says that if people have no such desire it may not be publicly thrust upon them.
Public exhibition of materials which appeal to prurient interest in sex does not bear that reasonable degree of relationship to expression and dissemination of ideas in a free society which would warrant judicial interference with its prohibition.
The District Attorney further contends that the statute is in the nature of a regulation of commercial advertising, which is clearly within the police power of the State, citing Valentine v. Chrestensen (316 U. S. 52) which upheld a law prohibiting distribution of commercial advertising on public streets and Breard v. Alexandria (341 U. S. 622), which upheld a ban on door-to-door magazine solicitation, distinguishing Martin v. Struthers (319 U. S. 141), a case involving a ban on handbills, where “ no element of the commercial entered ”. (Cf. Lovell v. Griffin, 303 U. S. 444.) Although the major attack of the bill (see supporting memorandum of the State Executive Department, Legis. Mem. A-307-8, 1971) is clearly on commercial smut panderers, the statute does not limit its effect to the commercial displayer of sexually offensive material. If therefore, persons not constitutionally subject to such regulation were able to be caught in the bill’s ambit it would be defective. However, I find no such impediment. The Legislature clearly did not desire to create an exempt class and I see no reason why the people sought to be protected from offensive sexual displays should lose that protection merely because the display may be for a noncommercial purpose or in a residential neighborhood. In the words of Olives, Wendell Holmes, ‘ ‘ Billboards properly may be put in a class by themselves and prohibited ‘ in residence districts of a city in the interest of the safety, morality, health and decency of the community. ’ ” (St. Louis Poster Adv. Co. v. St. Louis, 249 U.S. 269, 274).
The defendant, citing a series of Supreme Court decisions, from Roth v. United States (354 U. S. 476 [1957]) to Redrup v. New York (386 U. S. 767 [1967]), asserts that prohibitions in this area only apply to obscenity and that a public display statute limited to ‘1 obscene materials would be on safer constitutional grounds ”. The argument is disingenuous. If all that the State can prohibit from public display is obscene material there would be no need for this statute. Such activity is already *118 prohibited. (Penal Law, § 235.05 [Obscenity].) Further, the cases relied upon by defendant relate to censorship or prosecution of allegedly obscene material. We are not dealing here with an obscenity statute, but rather, under article 245 with an offense “against public sensibilities,” the same category which includes public lewdness (Penal Law, § 245.00) and exposure of a female (Penal Law, § 245.01), which defendant conceded on oral argument were constitutional. Redrup (supra, p. 769) offers the defense little solace, for the court there took pains to point out that there was no ‘ ‘ suggestion of an assault upon individual privacy by publication in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it.”
Defendant also contends that section 245.11 of the Penal Law is unconstitutionally vague.
I cannot agree. “ The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication. The primary issues involved are whether the provisions of a penal statute are sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties and to apprise judge and jury of standards for the determination of guilt. If the statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional.” (Landry v. Daley, 280 F. Supp. 938, 951 [N. D. Ill., 1968]).
It would be difficult to construct a statute less vague. Sections 245.10 and 245.11 describe what is proscribed with anatomical precision. While the defendant quotes a number of cases where statutes were voided for vagueness (none of which is remotely related to sections 245.10 and 245.11 of the Penal Law) he does not present any examples of what he considers vague here. In fact, the definitions of nudity, sexual conduct and sadomasochistic abuse in section 245.11 are exactly the same as those in section 235.20 of the Penal Law relating to disseminating indecent materials to minors. The language in section 235.20 was upheld by the Supreme Court in Ginsberg v. New York (390 U. S. 629).
Finally, the defendant asserts that the statute is so overbroad as to subject displays clearly innocent within its orbit. He claims that a well-known advertisement for a sun tan lotion showing a toddler with a bare bottom might violate the statute. This argument lacks merit. One of the elements that the People must establish beyond a reasonable doubt is that the material shown must appeal to “ prurient ” interest in sex. This limi *119 tation would protect works of art as well as the bare-hottomed toddler. But this is not the situation with regard to the defendant’s displays. While the small pictures would be difficult to see from the street and do not in my view appeal to prurient interest, the large nude is next to a picture of a man and woman in bed. A billboard proclaims 11 Christa ” as “ swinging girl and 4 happy men.”. The appeal to prurient interest is manifest Ginzburg v. United States (383 U. S. 463).
In People v. Stover (supra) a Westchester County resident, in violation of a village ordinance, hung out dirty laundry on a clothes line in his front yard abutting the street. The purpose was to protest high taxes. In upholding the ordinance, Chief Judge Fuld, speaking for the majority, sustained the constitutionality of the ordinance despite a claim that the defendants’ freedom of expression was violated.
“ The prohibition against clothesline is designed to proscribe conduct which offends the sensibilities and tends to depress property values. The ordinance and its prohibition bear ‘ no necessary relationship ’ to the dissemination of ideas or opinion and, accordingly, the defendants were not privileged to violate it by choosing to express their views in the altogether bizarre manner which they did. It is obvious that the value of their ‘ protest ’ lay not in its message but in its offensiveness.” (12 N Y 2d 462, 470).
If the State can prevent a man from displaying his dirty linen in public it can certainly prevent him from showing dirty pictures in public.
The statute is constitutional. The defendant is convicted.