**Melvin W. MOORE et al., Plaintiffs,**

**v.**

**The SCHOOL BOARD OF GULF COUNTY, FLORIDA, et al., Defendants.**

**Civ. A. No. 894.**

United States District Court,
N. D. Florida,
Marianna Division.

Sept. 20, 1973.

Richard H. Frank, Tampa, Fla., for plaintiffs.

Cecil G. Costin, Port St. Joe, Fla., John D. Carlson, Tallahassee, Fla., for defendants.

## ORDER

### PRELIMINARY STATEMENT OF ACTION.

MIDDLEBROOKS, District Judge.

This action was commenced under Title 42, U.S.C.A. Section 1983 and the First and Fourteenth Amendments to the Constitution of the United States and jurisdiction is invoked pursuant to Title 28, U.S.C.A., Sections 1331 and 1343(3), (4). By order of this Court on August 19, 1972, an original party plaintiff in this action, the Florida Education Association, a non-profit Florida corporation, was dismissed as a party plaintiff for want of standing to sue. By further order of this Court on March 12, 1973, plaintiff Gwen Moore was added as a party plaintiff on motion to amend the complaint.

Plaintiff Melvin W. Moore seeks to permanently enjoin defendants' denial of continuing contract status as a teacher in the Gulf County School System, conditioning his continued employment on the offer of a fourth year annual contract upon a commitment to refrain from utterances and statements protected by the First Amendment to the Constitution of the United States and from imposing retributive sanctions upon him or any other person employed by the school board as a result of the exercise of First Amendment protected rights.

Plaintiff Gwen Moore seeks an injunctive order requiring reinstatement to her previous employment with full benefits and seniority.

Both plaintiffs seek compensatory damages, costs and attorney's fees.

Plaintiffs' amended complaint alleges that on or about May 2, 1972, the defendants informed plaintiff Melvin Moore that he would not receive a continuing contract of employment and that

a fourth year annual contract of employment was offered conditioned on his acceptance of that contract with a commitment to the school board that he would talk about nothing but Biology on school property; that the sole reason for denial of a continuing contract was based on statements and utterances made by plaintiff Melvin Moore which were within the protection and guarantees of the First Amendment and that said condition being imposed and continuing contract being denied were violative of his protective guarantees under the Fourteenth Amendment. Plaintiff Melvin Moore further alleged that the above mentioned actions of the defendant school board were designed and intended to penalize him for protected utterances and statements and to chill and inhibit the exercise by other teachers of their right to engage fully in constitutionally protected forms of speech.

Plaintiffs' amended complaint further alleges that on or about May 3, 1972, plaintiff Gwen Moore, wife of plaintiff Melvin W. Moore, was notified by defendant that her employment as secretary to the principal of Port St. Joe High School was being terminated. Plaintiffs allege that this termination was based solely on plaintiff Melvin Moore's refusal to relinquish his First Amendment rights as guaranteed by the Constitution of the United States.

Having considered pleadings, exhibits, stipulations, evidence and argument of counsel before the Court in this cause, having considered the demeanor of the witnesses who have testified and having resolved as trier of fact the credibility choices to be made, this Court makes the following findings of fact and conclusions of law as may be required by Rule 52(a), Federal Rules of Civil Procedure:

## FINDINGS OF FACT

1. Plaintiff Melvin W. Moore is a citizen of the United States and was a Biology teacher from September 1969 through the 1971–1972 school year at Port St. Joe High School, Gulf County, Florida.

2. Plaintiff Gwen Moore, wife of plaintiff Melvin W. Moore, is a citizen of the United States and was a secretary to the principal of Port St. Joe High School from December 1970 through the 1971–1972 school year.

3. The defendant Gulf County School Board is the governmental body charged with the organization and control of the public schools of Gulf County.

4. The defendants Gene Raffield, William Roemer, Waylon Graham, Kenneth Whitfield and Billy Joe Rich were the duly elected and acting members of the Gulf County School Board during the year 1972. On November 21, 1972, defendants Wallace Guillot and Herman Ard, newly elected members of the Gulf County School Board, replaced defendants Graham and Rich in their capacity as board members.

5. Up to and including April 11, 1972, plaintiff Melvin W. Moore received at least two evaluations from the principal of Port St. Joe High School, Zach Wuthrich and by letter dated April 26, 1972, plaintiff Melvin W. Moore was advised by Mr. Wuthrich that his reappointment as a teacher under a continuing contract was being recommended for the school year 1972–1973.

6. Testimony indicates that non-instructional personnel such as the plaintiff Gwen Moore are not entitled to tenure and are employed on a year to year basis.

## EVENTS PRIOR TO MAY 2, 1972

7. Testimony disclosed that during the early part of April 1972, Mr. Wuthrich, then principal at Port St. Joe High School, was advised by the Superintendent of Public Instruction for Gulf County, Florida, that he would no longer continue in his capacity as principal of Port St. Joe High School after the 1971–1972 school year.

8. Further testimony disclosed that Mr. Wuthrich advised his secretary, plaintiff Gwen Moore, of his termination of duties as principal and advised that it would be announced publicly at

a later date. Testimony also disclosed that plaintiff Gwen Moore informed her husband, plaintiff Melvin Moore of Mr. Wuthrich's situation.

9. Various members of the school board had received complaints regarding plaintiff Melvin W. Moore in his teaching capacity prior to the early part of April 1972, but the testimony produced evidenced that the bulk of complaints as to Mr. Moore's utterances and statements occurred after Mr. Wuthrich was advised that he would no longer serve as principal after the completion of the 1971–1972 school year.

10. During that period from early April through May 1, 1972, numerous complaints were made to defendants Graham, Rich and Raffield. These complaints were mainly from parents although a few were made by students and in one instance by a teacher. In essence, the complaints were directed toward plaintiff Melvin W. Moore's use of classroom time to discuss teacher salaries and his personal financial status, in addition to criticism of the Superintendent, the Gulf County School Board, High School policies and the allocation of funds to the High School Athletic Department. These complaints were relayed to Superintendent Craig by the board members and in at least one instance by a teacher/coach at the high school.

### EVENTS OF MAY 2, 1972

11. On May 2, 1972, defendant school board summoned plaintiff Melvin W. Moore to appear at their regular meeting. After his arrival at said meeting, Mr. Moore was advised that he had not been recommended by the Superintendent for continuing contract status for the 1972–1973 school year based on reports received from parents and children of his improper use of classroom time.

12. In lieu of continuing contract status (which grants tenure to the holder) the Superintendent had recommended and the defendant school board offered Mr. Moore a fourth year annual contract that was probationary in nature, conditioned on Mr. Moore's agreeing that he would refrain from using substantial portions of his classroom time in discussions of subjects unrelated to the subject of Biology. If Mr. Moore accepted this fourth year annual contract he was to advise the Superintendent the next day and sign his acceptance of said conditional contract.

### EVENTS AFTER MAY 2, 1973

13. On May 3, 1972, plaintiff Melvin W. Moore advised the secretary to the Superintendent of Schools that he was declining the offer of the fourth year annual contract.

14. On May 3, 1972, plaintiff Gwen Moore was informed by Superintendent Craig that after the end of the school year on June 30, 1972, she would no longer be needed as secretary to the principal of Port St. Joe High School. By letter dated May 23, 1972, from Superintendent Craig, Mrs. Moore was formally advised of the termination of her employment due to the feeling of the Superintendent and the school board that the new principal should have the prerogative of recommending his secretary.

15. During the latter part of May or the early part of June, at a high school workshop with the desegregation center, plaintiff Gwen Moore met the new principal of Port St. Joe High School, a Mr. Kenneth D. Herring, at which time Mrs. Moore spoke with Mr. Herring about the possibility of employment as his secretary for the coming 1972–1973 school year.

16. The new principal Herring advised plaintiff Gwen Moore that he would consider her for the position. She was not hired by the new principal as secretary.

17. Part of the dissatisfaction of the board and the Superintendent with plaintiff Melvin W. Moore arose from information given by parents of students that Mr. Moore had not confined himself to criticisms of the educational system but had also dealt with his per-

sonal sexual experiences during classroom time. Of particular interest to the Court was the testimony of Benjamin Morris Gibson and his comments concerning plaintiff Melvin W. Moore's telling his Biology class of his personal dealings with prostitution houses in Japan. Gibson related that Mr. Moore had told the class about him and some other men buying some prostitutes and taking them to a hotel and that it was the first time for the one he had bought and that she was crying and upset and the other men with him wanted to trade but that he kept her. This testimony was substantiated by a number of other students.

18. At trial on July 31, 1973, this Court entered an order from the Bench directing the School Board of Gulf County, Florida, to convene a hearing for the purpose of taking testimony relating to whether Melvin W. Moore engaged in classroom utterances of a nature deemed sufficient by the Court to deny him reemployment pursuant to a continuing contract. This Court was concerned as to whether plaintiff Melvin W. Moore should be allowed inside any classroom at all, notwithstanding his right to a continuing contract should the Court rule that denial of said contract was as a result of subordination of his First Amendment rights by the defendant school board.

19. On August 7, 1973, plaintiffs through their counsel filed a motion requesting a vacation of the order of July 31, 1973, due to an article in the Port St. Joe weekly newspaper, The Star, indicating that plaintiff Melvin W. Moore was unfit to teach, had engaged in improper classroom behavior and relating further prejudicial comments concerning Mr. Moore.

20. On August 9, 1973, this Court entered an order granting plaintiffs' motion and vacating the July 31, 1973, order and further ordering that the trial would continue on August 14, 1973.

21. Testimony at trial on August 14, 1973, by at least four students substantiated the Japanese prostitute experience and related instances of Mr. Moore's discussing masturbation in a mixed class, to the extent that individual students were asked if they had ever masturbated and that if they said they hadn't, they were lying. Also revealed were instances of Mr. Moore telling his class about a confrontation with homosexuals and of a bizarre sounding treatment for gonorrhea.

22. Further substantiated by testimony at trial were classroom discussions during which the school board, Superintendent and high school athletic program and the athletic department were criticised by plaintiff Melvin W. Moore.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of and the parties to this action. Title 28, U.S.C.A., Sections 1331 and 1345.

2. Florida law provides that a certified teacher who has completed three years of service in the same county and who has been reappointed for a fourth year of service must be recommended by the Superintendent for a continuing contract before the school board is authorized to issue same. Section 231.36(3)(a), Florida Statutes Annotated.

3. The Superintendent in making his recommendation may base his decision on successful performance of duty and the demonstrated professional competence of the teacher, Section 231.36(3)(a)(4), Florida Statutes Annotated.

4. The three year service requirement for a continuing contract may be extended to four years when prescribed by the school board and agreed to in writing by the employee. Section 231.36(3)(c), Florida Statutes Annotated.

5. The crux of the matter here for determination is whether Mr. Moore's utterances and statements are those protected by the First Amendment and whether the denial of his continuing contract and offer of a fourth year annual contract subject to certain condi-

tions and the termination of Mrs. Moore were violative of any property or procedural due process rights due plaintiffs by operation of the Fourteenth Amendment.

■ 6. Regarding Mr. Moore's First Amendment claim, clearly a citizen, be he teacher or technician, may not be denied benefits in a manner that inhibits his freedom of enjoyment of constitutionally protected interests, particularly the enjoyment of the freedom to speak. To do otherwise would penalize and deter his enjoyment and use of those guaranteed freedoms. Perry v. Sindermann, 1972, 408 U.S. 593, 92 S.Ct. 2694, 33 L. Ed.2d 570, Cf. Shelton v. Tucker, 1960, 364 U.S. 479, 485–486, 81 S.Ct. 247, 5 L.Ed.2d 231; Keyishian v. Board of Regents, 1967, 385 U.S. 589, 605–606, 87 S.Ct. 675, 17 L.Ed.2d 629.

■ It is clear that this case does *not* concern First Amendment utterances or statements made by a teacher *outside* the classroom. It is imperative to note here that were that the case Mr. Moore in all probability would be entitled to relief.

7. There is overwhelming evidence in this case to the effect that plaintiff Melvin W. Moore utilized classroom time in criticizing the Superintendent, the school board and the school system. Not only was this brought out by testimony at trial and in depositions filed with the Court, but in the minutes of the school board's May 2, 1972, meeting. These were the motivating factors that led the Gulf County School Board to offer Mr. Moore a fourth year annual contract in lieu of a continuing contract and in this Court's opinion, at first blush and in the final analysis, the school board was well within its rights to do so.

8. Mr. Moore obviously used his classroom as a springboard for expounding his ideas concerning the Superintendent, the school board and the school system. No evidence appears of any activity of this nature outside the classroom.

■ Tenth Grade Biology students have the right and freedom not to listen and as a captive audience should be able to expect protection from improper classroom activities. Close v. Lederle, 424 F.2d 988 (1st Cir. 1972), cert. den. 400 U.S. 903, 91 S.Ct. 141, 27 L.Ed.2d 240.

■ 9. Plaintiff has the right to criticize his employers and the school administration but is limited in the exercise of that right to the extent that its exercise may not invade the classroom occupied by fifteen year olds and must be balanced against the need for meaningful school administration. Pickering v. Board of Education of Lp. H. S. Dist. 205 Ill., 391 U.S. 563, 569, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968); Moore v. Winfield City Board of Education, 452 F.2d 726, 728 (5th Cir. 1971). Whether Mr. Moore's criticism of the Superintendent, the school board and the school administration are protected by the First Amendment can only be decided by "a weighing of the asserted interests". Moore v. Winfield City Board of Education, supra, at 728; Fluker v. Alabama State Board of Education, 441 F.2d 201, 207 (5th Cir. 1971); Pred v. Board of Public Instruction of Dade County, Florida, 415 F.2d 851, 857 (5th Cir. 1969).

10. In weighing the interests in this case, that is, Mr. Moore's rights against Gulf County's need for meaningful school administration, this Court is quick to note again that there has been little indication of utterances or statements critical of the Superintendent, school board or school administration made outside the classroom[1]. This Court realizes that from time to time it may be necessary for a school teacher to

---

[1]. At a meeting of the Gulf County Education Association later in May and at a special school board meeting shortly thereafter, some statements may have been made that were critical of Superintendent Craig, the school board or the administration. However, these statements would not have been a motivating factor in deciding not to grant Mr. Moore a continuing contract.

delve into thought provoking discussions with students that may well concern areas of interest other than English, Biology, American History, or the like. Even then a teacher, above all, has a serious responsibility in that the teacher is guiding a student in the development of his mind and may well leave an immeasurable impact on that student's mind. It would appear to this Court that criticisms of a school board, Superintendent and school administration in the classroom could well lead students to hold these officials as well as some of their other teachers in various degrees of contempt. This is certainly no assistance to the educational processes existing in Gulf or any other county.

While the classroom may be "[t]he 'Marketplace of ideas' [with] [t]he nation's future depend[ing] upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth 'out of a multitude of tongues, [rather] than through any kind of authoritative selection' "[2], straight criticism by a teacher of an educational system is quite a different matter than the presentation of ideas with commentary reflecting two sides of an issue, leaving a preference as to that issue left up to the individual student's discretion.

Here we have a high school Biology teacher utilizing as much as a full class period in criticism of the Superintendent, the school board and the school system, to include comments brought out at trial such as "You'd better tell your parents to get off their ass and elect a new school board" and "You can't call yourself a Christian if you vote for Mr. Craig (the Superintendent)". Comments such as these and lengthy discussions on the inadequacy of teacher salaries in general and in particular Mr. Moore's salary can in no beneficial way aid a teacher in preparing his high school students for an adult life or for further educational endeavors. Testimo-

ny of a Marine Biology student of Mr. Moore was to the effect that he advised the class that some students were telling their parents about his talking about the school board so he thought that he should desist from such comments in the future.

11. Even if Mr. Moore were due relief, this Court sitting as a court of equity could not and *would* not order the Gulf County School Superintendent and the school board to reinstate him as a teacher with continuing contract status and granting him, in essence, a lifetime contract, for Mr. Moore abused his authority and left legitimate areas of discussion when be began relating personal experiences with Japanese prostitutes who were "innocent", among other illegitimate topics.

12. As to plaintiff Melvin Moore's Fourteenth Amendment claim, it is the opinion of this Court that Mr. Moore's rights have not been violated at all. Mr. Moore was given two choices, one to accept a fourth year annual contract on the condition that he not discuss subjects other than Biology in the classroom and two, to seek employment elsewhere. Mr. Moore, rather than accepting the school board's offer and then begin litigating this matter, chose to seek other employment and found same in the Jefferson County, Florida, school system.

13. The only legitimate loss Mr. Moore would have suffered had he remained under an annual contract, was tenure. As to that tenure this is not a case of a warranted "expectancy" of employment or a case where Mr. Moore has some property interest at stake. Perry v. Sindermann, supra; see also Moore v. Knowles, 482 F.2d 1069, CA5, 1973, opinion on rehearing; and Zimmer v. Spencer etc. et al., 485 F.2d 176, CA5, 1973.

A teacher without any form of tenure or contract of employment is en-

---

2. Keyishian v. Board of Regents, 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629, 640–641 (1967); quoted with approval in Tinker v. Des Moines Community School

Dist., 393 U.S. 503, 512, 89 S.Ct. 733, 739, 21 L.Ed.2d 731, 741; Pred v. Bd. of Public Instruction of Dade County, Fla., supra at 856 of 415 F.2d.

titled to a hearing if a decision to not rehire him deprived him of any of his liberties and the decision was made absent any recognized standards of due process. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); See also Moore v. Knowles et al., supra. Such is not the case here.

Mr. Moore's refusal to accept the offer of a fourth year annual contract was a rejection of a reasonable offer by the school board. Rather than act harshly and with finality on the multitude of adverse reports from parents, students and at least one teacher as to Mr. Moore's actions in the classroom, these reports coming in fast and furiously during a period of less than a month, the Superintendent and board offered Mr. Moore an annual contract, giving him an opportunity to reverse his aggressively destructive course.

■ 14. Turning briefly to the plaintiff, Mrs. Moore, and her Fourteenth Amendment claim couched on a violation of her plaintiff husband Melvin W. Moore's First Amendment rights and guarantees, simply put, Mrs. Moore may prevail only if Mr. Moore prevails.

15. By her own testimony the job as secretary to the principal at Port St. Joe High School, as other non-instructional or supervisory positions, is on a year to year basis, without written contract. The Court, in retrospect, feels that a common sense approach to her status may have been taken. As the wife of a teacher who wants to teach, the likelihood of her remaining in Gulf County was no doubt minimal. The evidence shows that she and her husband were dissatisfied with the decision of the Superintendent not to continue Mr. Wuthrich as principal.

16. Mrs. Moore found other employment during the summer with higher pay and on her family's being relocated obtained further employment at an even greater rate of pay. Accordingly, it is

Ordered and Adjudged:

1. That plaintiff Melvin W. Moore's request for a permanent injunction en-joining the denial of his continuing contract status as a teacher in the Gulf County school system be and the same hereby is denied.

2. That plaintiff Gwen Moore's request for an injunctive order reinstating her to her previous employment with all benefits and seniority therein be and the same hereby is denied.

3. That the request of plaintiffs Melvin W. Moore and Gwen Moore seeking compensatory damages, costs and attorney's fees be and the same hereby is denied.

4. That each party to this action shall bear his own costs.