847 F.2d 1045
 93 A.L.R.Fed. 897
 Richard SERRA, Plaintiff-Appellant,
v.
UNITED STATES GENERAL SERVICES ADMINISTRATION; Terrence C.
Golden, Administrator, General Services Administration;
William F. Sullivan, Commissioner, Public Buildings Service,
General Services Administration; William J. Diamond,
Regional Administrator (Region Two), General Services
Administration, Officially and Individually; Dwight Ink,
Former Acting Administrator, General Services
Administration, Individually, Defendants- Appellees.
 Nos. 822, 823, Dockets 87-6231, 87-6251.
 United States Court of Appeals,
Second Circuit.
 Argued March 4, 1988.
Decided May 27, 1988.
 
 Jay Topkis, New York City (Leslie Urfirer Cornfeld, Paul, Weiss, Rifkind, Wharton & Garrison, and Gustave Harrow, New York City on the brief), for plaintiff-appellant.
 Richard M. Schwartz, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., Richard W. Mark, Asst. U.S. Atty., New York City, Clyde C. Pearce, Jr., Gen. Counsel, Barbara G. Gerwin, Regional Counsel, Washington, D.C., on the brief), for defendants-appellees.
 Before NEWMAN and KEARSE, Circuit Judges, and CEDARBAUM, District Judge.*
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This appeal presents the question whether the removal of a government-owned artwork from federal property violates the free expression and due process rights of the artist. Richard Serra, a prominent American sculptor, brought the action seeking to bar the United States General Services Administration (GSA) from removing his controversial sculpture "Tilted Arc" from Federal Plaza in lower Manhattan. The District Court for the Southern District of New York (Milton Pollack, Judge) granted summary judgment against Serra on his constitutional claims. For the reasons that follow, we affirm the judgment of the District Court.
 
 Background
 
 2
 The facts and procedural history of this case are comprehensively set forth in the two opinions of the District Court, Serra v. United States General Services Administration, 664 F.Supp. 798 (S.D.N.Y.1987), and Serra v. United States General Services Administration, 667 F.Supp. 1042 (S.D.N.Y.1987). We set forth only those facts necessary for an understanding of the present appeal.
 
 
 3
 In 1979, GSA selected Serra to create an outdoor sculpture to be installed on the plaza adjacent to the federal office complex at 26 Federal Plaza in lower Manhattan (the "Plaza" or "Federal Plaza"). The sculpture was commissioned under GSA's art-in-architecture program pursuant to which one half of one percent of the construction cost of federal buildings is reserved for the funding of artworks by living American artists. Serra is an internationally renowned sculptor, known primarily for his "site-specific" work. According to Serra, a site-specific sculpture "is one which is conceived and created in relation to the particular conditions of a specific site." Site-specific sculpture is meaningful only when displayed in the particular location for which it is created; such works are not intended to be displayed in more than one place. Serra's site-specific works consist primarily of steel plates or "forgings" that are welded together to form large abstract forms. Serra's sculptures have been displayed in many prominent locations throughout the world, including the Tuilleries Gardens in Paris.
 
 
 4
 In September 1979, Serra signed a contract with GSA setting forth the terms of his commission. The contract provided that Serra would receive a fee of $175,000 for building a sculpture on Federal Plaza. The contract further provided that "all designs, sketches, models, and the work produced under this Agreement ... shall be the property of [the United States]." The contract contained no provisions restricting the Government's use of the sculpture after it was purchased.
 
 
 5
 "Tilted Arc" was completed and installed at Federal Plaza in 1981. The work is an arc of steel 120 feet long, 12 feet tall, and several inches thick. It is fabricated out of Cor-Ten steel, a material designed to oxidize naturally over time. Consequently, the work is now coated with what the artist refers to as "a golden amber patina" and what the sculpture's critics refer to as "rust." The sculpture bisects Federal Plaza. According to Serra, "Tilted Arc" is site-specific: It was designed for the Federal Plaza and is artistically inseparable from its location. Serra maintains that removing "Tilted Arc" to another site will destroy it.
 
 
 6
 The pigeons had barely begun to roost on "Tilted Arc" before the sculpture became the object of intense public criticism. GSA received hundreds of letters from community residents and federal employees complaining about the sculpture's appearance and its obstruction of Federal Plaza's previously open space. Initially, GSA took the position that critics should give the work time to gain public acceptance. However, when hostility to the work had not abated after several years, GSA agreed to hold a hearing on the possible relocation of the sculpture.
 
 
 7
 A public hearing was held in March 1985, presided over by William A. Diamond, GSA Regional Administrator. More than 150 persons spoke at the hearing, representing a wide range of constituencies including artists, civic leaders, employees at the Federal Plaza complex, and community residents. In addition, Serra was given the opportunity to state his views on the site-specific nature of "Tilted Arc" and the need to keep it at Federal Plaza. Those urging removal tended to be federal employees and area residents who complained primarily of the obstruction of Federal Plaza and the sculpture's unappealing aesthetic qualities. Those against removal tended to be artists and others from the art world who pointed to the work's significance in 20th Century sculpture and the importance of protecting the artist's freedom of expression.
 
 
 8
 Following the hearing, Diamond prepared a report in which he recommended to Dwight Ink, Acting Administrator of GSA, that "Tilted Arc" be relocated. Diamond urged primarily that the sculpture obstructed Federal Plaza, preventing the public from using the space for recreation and community events. Additionally, he noted concerns expressed at the hearing regarding potential safety hazards caused by the sculpture and its vulnerability to graffiti. Though Diamond included in the report his opinion that the atmosphere of the Plaza had been "turned into affrontery," he also stated that "my consideration of the issue of whether to relocate the sculpture would not be in any way based upon the arguments of its beauty, its ugliness, or its place in art history."
 
 
 9
 Diamond's report and the entire administrative record were reviewed by Ink. Ink also met with Serra and his attorney so that Serra could personally articulate his concern about site-specificity. In a written decision issued in May 1985, Ink decided that "Tilted Arc" should be relocated. He relied largely on the views of federal employees and community residents that the sculpture interfered with their use of Federal Plaza. Like Diamond, Ink expressly avoided linking his decision to his personal evaluation of the work's artistic merit; he stated that he "made no judgment whatsoever concerning the aesthetic value of the Tilted Arc."
 
 
 10
 Serra initiated this lawsuit in December 1986. His complaint named as defendants GSA and administrators Diamond and Ink in their individual capacities. He alleged that GSA's decision to remove "Tilted Arc" violated his rights under the Free Speech Clause of the First Amendment, the Due Process Clause of the Fifth Amendment, federal trademark and copyright laws, and state law. Serra sought a declaratory judgment that his rights had been violated, an injunction against removal of the sculpture, and damages from the individual defendants in excess of $30,000,000.
 
 
 11
 The District Court issued two opinions disposing of Serra's complaint. In the first opinion, 664 F.Supp. 798, Judge Pollack dismissed Serra's claims against GSA administrators Diamond and Ink in their individual capacities on the ground of qualified immunity. Serra does not appeal that decision. In his second opinion, 667 F.Supp. 1042, the District Judge dismissed for lack of subject matter jurisdiction Serra's claims based on breach of contract, the federal trademark and copyright statutes, and state law. Judge Pollack granted summary judgment to GSA on Serra's constitutional claims on the grounds that the decision to relocate "Tilted Arc" was a content-neutral determination made to further significant government interests and that the hearing provided all the process that was due. On appeal from the judgment dismissing his suit, Serra challenges only the rejection of his free expression and due process claims.
 
 Discussion
 A. Free Expression
 
 12
 The District Court assumed, without deciding the issue, that "Tilted Arc" is expression protected to some extent by the First Amendment. The Court reasoned that "ideas need not necessarily be spoken or written to qualify for First Amendment protection." 667 F.Supp. at 1055. While we agree that artwork, like other non-verbal forms of expression, may under some circumstances constitute speech for First Amendment purposes, see, e.g., Doran v. Salem Inn, Inc., 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975) (topless dancing); Piarowski v. Illinois Community College, 759 F.2d 625, 628 (7th Cir.), cert. denied, 474 U.S. 1007, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985) (art), we believe that the First Amendment has only limited application in a case like the present one where the artistic expression belongs to the Government rather than a private individual.
 
 
 13
 " 'The purpose of the First Amendment is to protect private expression and nothing in the guarantee precludes the government from controlling its own expression or that of its agents.' " Columbia Broadcasting System, Inc. v. Democratic National Committee, 412 U.S. 94, 139 n. 7, 93 S.Ct. 2080, 2104 n. 7, 36 L.Ed.2d 772 (1973) (Stewart, J., concurring) (quoting T. Emerson, The System of Freedom of Expression 700 (1970)); see Muir v. Alabama Educational Television Comm'n, 688 F.2d 1033, 1044 (5th Cir.1982) (in banc) ("the First Amendment does not preclude the government from exercising editorial control over its own medium of expression"), cert. denied, 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983). Consequently, the Government may advance or restrict its own speech in a manner that would clearly be forbidden were it regulating the speech of a private citizen. See, e.g., Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (state may express official view of state history, but may not force individuals to do so); Muir v. Alabama Educational Television Comm'n, supra (state-operated public television station may cancel a scheduled program because of its content); see also United States Civil Service Comm'n v. National Association of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (act forbidding federal employees from engaging in political activity does not violate First Amendment).
 
 
 14
 In this case, the speaker is the United States Government. "Tilted Arc" is entirely owned by the Government and is displayed on Government property. Serra relinquished his own speech rights in the sculpture when he voluntarily sold it to GSA; if he wished to retain some degree of control as to the duration and location of the display of his work, he had the opportunity to bargain for such rights in making the contract for sale of his work. Nothing GSA has done limits the right of any private citizen to say what he pleases, nor has Serra been prevented from making any sculpture or displaying those that he has not sold. Rather, the Government's action in this case is limited to an exercise of discretion with respect to the display of its own property. Though there are conceivably situations in which the Government's exercise of its discretion in this regard could violate the First Amendment rights of the public, see Board of Education v. Pico, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982), nothing GSA has done here encroaches in any way on Serra's or any other individual's right to communicate.
 
 
 15
 Even assuming that Serra retains some First Amendment interest in the continued display of "Tilted Arc," we agree with the District Court that removal of the sculpture is a permissible time, place, and manner restriction.[1] Such restrictions are valid "provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984); see City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 804-05, 104 S.Ct. 2118, 2128, 80 L.Ed.2d 772 (1984); United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 673 (1968). Relocation of "Tilted Arc" conforms with these requirements.
 
 
 16
 GSA has a significant interest in keeping the Plaza unobstructed, an interest that may be furthered only by removing the sculpture. This interest stems from GSA's clearly established authority to maintain, operate, and alter federal buildings, including their "grounds, approaches, and appurtenances," 40 U.S.C. Secs. 490, 603(a), 612(1) (1982), which in turn derives from Congress' power under the Constitution "to dispose of and make all needful Rules and Regulations respecting the ... Property belonging to the United States." Art. IV, Sec. 3, cl. 2. In other contexts, the Government's important interest in controlling federal property has been found to prevail over individuals' First Amendment rights. See Lyng v. Northwest Indian Cemetery Protective Ass'n, --- U.S. ----, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) ("Whatever [free exercise] rights the Indians may have to the use of [the National Park], those rights do not divest the Government of its right to use what is, after all, its land.") (emphasis in original).
 
 
 17
 Nor does relocation of "Tilted Arc" preclude Serra from communicating his ideas in other ways. First, Serra has already had six years to convey his message through the sculpture's presence in the Plaza. Since the First Amendment protects the freedom to express one's views, not the freedom to continue speaking forever, the relocation of the sculpture after a lengthy period of initial display does not significantly impair Serra's right to free speech. Second, Serra has not shown that removal of the sculpture creates "any barrier to delivering to the media, or to the public by other means," whatever message he intended to convey with "Tilted Arc." Clark v. Community for Creative Non-Violence, supra, 468 U.S. at 295, 104 S.Ct. at 3070. Notwithstanding that the sculpture is site-specific and may lose its artistic value if relocated, Serra is free to express his artistic and political views through the press and through other means that do not entail obstructing the Plaza. See id. (demonstrators may not sleep in public park to protest plight of homeless).
 
 
 18
 Finally, the decision to remove "Tilted Arc" was not impermissibly content-based. According to the reports of GSA administrators Diamond and Ink, the primary reason for removal was the fact that the sculpture interfered with the public's use of Federal Plaza. Additionally, GSA was concerned about public safety and graffiti. Both Diamond and Ink expressly represented that they had not based their decisions on the work's artistic merit or its message. We agree with the District Court's assessment that "[t]here is no evidence in the record that GSA's decision to relocate the sculpture was based on the content of its message.... GSA's decision to relocate the structure was undertaken for functional purposes--in order to regain the openness of the plaza." 667 F.Supp. at 1056 (footnote omitted).
 
 
 19
 Serra argues that the GSA administrators' reports were disingenuous. Relying on Board of Education v. Pico, supra, Serra contends that he is entitled to a trial to determine whether in fact the removal was impermissibly content-based. We reject Serra's claim because he does not assert any facts that could possibly constitute a constitutional violation. In Pico, a plurality of the Supreme Court determined that a local school board could not remove books from the school library in order to deny the students access to ideas with which the board disagreed. 457 U.S. at 871, 102 S.Ct. at 2810. Recognizing that school officials enjoy significant discretion to determine the content of school libraries, the plurality said only that such discretion "may not be exercised in a narrowly partisan or political manner," for example if a Democratic school board sought to ban all books by Republicans, or an all-White school board decided to remove all books authored by Blacks. Id. at 870-71, 102 S.Ct. at 2809-10. The plurality left completely intact the board's discretion to remove books for other reasons. Thus, removal of books that were pervasively vulgar or educationally unsuitable would, even in the plurality's view, be "perfectly permissible." Id. at 871, 102 S.Ct. at 2810.
 
 
 20
 We recognize that this case poses at least the potential for a Pico-type First Amendment violation. Even where, as here, the removal of an artwork does not restrict the artist's free speech because the work is owned by the Government, it is still possible that the Government's broad discretion to dispose of its property could be exercised in an impermissibly repressive partisan or political manner. Nevertheless, even if we assume, without deciding, that Serra has standing to assert a Pico-type claim, it is clear that under any reading of the record in this case, the removal of "Tilted Arc" did not violate the principles of Pico. At the very most, Serra suggests that Diamond and Ink thought that "Tilted Arc" was ugly. That is surely an assessment of the work's content, but it raises no issue under Pico since there is no assertion of facts to indicate that GSA officials understood the sculpture to be expressing any particular idea, much less that they sought to remove the sculpture to restrict such expression or convey their own disapproval of the sculptor's message. Indeed, Serra is unable to identify any particular message conveyed by "Tilted Arc" that he believes may have led to its removal. In view of the uncertainty as to the meaning of "Tilted Arc" and in the face of the overwhelming evidence that it was removed solely because of its obstructive effect on the Plaza, Serra has failed to present any facts to support a claim that Government officials acted in a "narrowly partisan or political manner."
 
 
 21
 To the extent that GSA's decision may have been motivated by the sculpture's lack of aesthetic appeal, the decision was entirely permissible. As stated above, Pico held that books could be removed from the school library if they were vulgar or educationally unsuitable. Similarly, GSA, which is charged with providing office space for federal employees, may remove from its buildings artworks that it decides are aesthetically unsuitable for particular locations. Moreover, the Supreme Court has consistently recognized that consideration of aesthetics is a legitimate government function that does not render a decision to restrict expression impermissibly content-based. See, e.g., City Council v. Taxpayers For Vincent, supra, 466 U.S. at 805-07, 104 S.Ct. at 2128-30; Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507-08, 101 S.Ct. 2882, 2892-93, 69 L.Ed.2d 800 (1981); Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). Finally, several courts have held that the state may regulate the display and location of art based on its aesthetic qualities and suitability for the viewing public without running afoul of First Amendment concerns. See Piarowski v. Illinois Community College, supra, 759 F.2d at 630-32; Close v. Lederle, 424 F.2d 988 (1st Cir.), cert. denied, 400 U.S. 903, 91 S.Ct. 141, 27 L.Ed.2d 140 (1970).
 
 
 22
 We recognize that courts considering First Amendment challenges by artists to governmental decisions to remove purchased works of art must proceed with some caution, lest a removal ostensibly based on unsuitable physical characteristics of the work or an unfavorable assessment of its aesthetic appeal camouflage an impermissible condemnation of political viewpoint. At the same time, artists must recognize that overly intrusive judicial restraints upon the prerogatives of government to decide when, where, and whether to display works of art that it has purchased would pose a serious threat to the vigor of such commendable ventures as GSA's art-in-architecture program. Government can be a significant patron of the arts. Its incentive to fulfill that role must not be dampened by unwarranted restrictions on its freedom to decide what to do with art it has purchased. Cf. Advocates for the Arts v. Thomson, 532 F.2d 792, 796-97 (1st Cir.) (emphasizing broad discretion in allocating public funding for the arts), cert. denied, 429 U.S. 894, 97 S.Ct. 254, 50 L.Ed.2d 177 (1976). If Serra had presented any facts to create a genuine issue as to whether GSA was removing "Tilted Arc" to condemn a political point of view or otherwise to trench upon First Amendment rights, we would require a trial, just as we did in Pico. Pico v. Board of Education, 638 F.2d 404 (2d Cir.1980), aff'd, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982). But he has not done so. In the absence of such facts, his lawsuit is really an invitation to the courts to announce a new rule, without any basis in First Amendment law, that an artist retains a constitutional right to have permanently displayed at the intended site a work of art that he has sold to a government agency. Neither the values of the First Amendment nor the cause of public art would be served by accepting that invitation.
 
 B. Due Process
 
 23
 Serra claims that he was denied due process because GSA administrator Diamond "prejudged" the issue of whether "Tilted Arc" should be removed. Serra claims that Diamond had decided that he was opposed to the sculpture even before the public hearing had begun. In support of this argument, Serra points to statements Diamond made to the press before and during the hearing indicating that he was against retaining "Tilted Arc" at Federal Plaza. Additionally, Serra suggests that Diamond may have stirred up opposition to the sculpture among federal employees and community residents. Serra argues that Diamond's conduct violated his right to a fair and impartial hearing on the removal issue.
 
 
 24
 Accepting Serra's factual allegations as true for purposes of this appeal, we conclude that his due process claim fails as a matter of law. First, Serra has no protected property interest in the continued display of "Tilted Arc" at Federal Plaza. Pursuant to Serra's contract, the sculpture is the property of GSA, not the artist. Moreover, though Serra might suffer injury to his reputation as a result of relocation of the sculpture, such an injury without an accompanying loss of government employment would not constitute a constitutionally cognizable deprivation of property or liberty. Paul v. Davis, 424 U.S. 693, 701-10, 96 S.Ct. 1155, 1160-65, 47 L.Ed.2d 405 (1976). And without a protected property or liberty interest, Serra was not constitutionally entitled to a hearing before the sculpture could be removed. The lengthy and comprehensive hearing that was provided was therefore a gratuitous benefit to Serra. Even if Diamond was not entirely impartial, Serra received more process than what was due. Second, there is no allegation that Ink was biased or in any way prejudged the removal issue. Since Ink undertook a de novo review of the entire controversy, the effect of Diamond's prejudgment, if any, was marginal. Particularly since Serra was given the opportunity to defend his position at length before both Diamond and Ink, any due process requirement that might have arisen in the context of this case was clearly satisfied.
 
 
 25
 The judgment of the District Court is affirmed.
 
 
 
 *
 The Honorable Miriam Goldman Cedarbaum of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 The Government argues that its decision to remove "Tilted Arc" does not implicate the First Amendment because Federal Plaza is not a public forum. However, the cases it cites do not involve open public places like Federal Plaza. E.g., Lehman v. City of Shaker Heights, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (municipal buses); Perry Education Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) (school mail facilities); Piarowski v. Illinois Community College, supra, 759 F.2d at 628-29 (school art gallery). Streets and public parks " 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' " Perry Education Ass'n v. Perry Local Educators' Ass'n, supra, 460 U.S. at 45, 103 S.Ct. at 955 (quoting Hague v. CIO, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939)). We need not decide whether Federal Plaza is a public forum because, even in a public forum, expression is subject to reasonable time, place, and manner restrictions. See Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069 (1984)